## THE MIDDLESEX TURNPIKE COMPANY *against* FREEMAN:

### IN ERROR.

An open four-wheeled vehicle, drawn by one horse; the body resting on springs of steel, composed of panel-work, and turning up forward with a leather dash; with side lanterns; having stuffed cushions, and lining of figured damask cloth; designed and generally used for the transportation of passengers, but used occasionally for the transportation of goods; is "a pleasure carriage," and also "a wagon," within the charter of the *Middlesex Turn-Company.*

Where a vehicle is within a general description of vehicles subject to a certain toll, and is also embraced by a specific description of vehicles subject to a less toll, the latter is to determine the amount of toll.

Therefore, where the toll prescribed in the charter of a turnpike company for a four-wheeled pleasure carriage, was 25 cents, and for a wagon, 10 cents; it

*Middlesex,* July, 1840.

Middlesex Turnpike Co. *v.* Freeman.

was held, that a vehicle, which was a four-wheeled pleasure carriage and a wagon, was subject to the toll of 10 cents only.

A one-horse wagon, not being specifically named in the charter of the *Middlesex Turnpike Company,* is within the terms of the statute of 1827, relating to turnpike roads; and that statute enabled such company to elect to take the toll of 12½ cents, on such one-horse wagon, being also a four-wheeled pleasure carriage.

But neither that statute, nor the subsequent statute of 1839, did, or could, affect the rates of toll, which such company was authorized, by its charter, to receive, except with its assent.

The statute of 1839, relating to turnpike roads, by the 2d section of which, the statute of 1838 repealing the statute of 1827, is repealed, does not revive the last-mentioned statute; as the 1st section of the statute of 1839 contains provisions inconsistent with the statute of 1827, and would so far have repealed it, if the statute of 1838 had never existed.

THIS was an action of *assumpsit* for tolls, brought originally before a justice of the peace.

In the declaration, consisting of two counts, the plaintiffs recited their charter of incorporation, granted in *May,* 1802, by the terms of which they were authorized to collect, at each of their gates, the following tolls: "On each four-wheeled pleasure carriage, driver and passengers, 25 cents; each chaise, sulkey or chair, with one horse, driver and passengers, 12½ cents; every cart, wagon and driver, 10 cents." In granting the charter, the legislature reserved no power to alter or repeal it.

In the first count, the plaintiffs averred, that on the 15th of *September,* 1839, the defendant travelled on their road, and through one of their gates, "with a four-wheeled pleasure carriage," without paying the toll of 25 cents. In the second count, they alleged, that on the 2d of *October,* 1839, the defendant passed a gate on their road with a four-wheeled carriage, drawn by one horse, the body whereof was hung on springs of steel, and generally used as a pleasure carriage, and not used for the transportation of merchandize, without paying the toll of 12½ cents, due by virtue of a statute law in such case provided.

The defendant, in his plea, admitted, that he travelled through said gate on the plaintiffs' road, at each of the times specified in the declaration, in an open four-wheeled vehicle, drawn by one horse; the body being on springs of steel, and composed of panel-work, turning up forward with a leather dash; with side lanterns; with a single seat; with stuffed cushions of

figured damask cloth, the seat being lined with the same kind of cloth; the body extending backward from the seat about three feet; designed and generally used for the transportation of persons, but used occasionally, by the defendant, for the purpose of transporting goods and merchandize, going to mill and such other purposes as his convenience required. The defendant then pleaded a tender by him, and a refusal on the part of the plaintiffs, of the sum of 10 cents in full of the legal toll, at each of the times specified in the declaration.

To this plea the plaintiffs demurred; and the justice thereupon rendered judgment for the defendant.

On a writ of error in the superior court, that judgment was affirmed. The plaintiffs then, by motion in error, brought the record before this court for revision.

*Bacon*, for the plaintiffs, contended, 1. That the vehicle in question was "a four-wheeled pleasure carriage," within the meaning of the charter, and as such, subject to 25 cents toll. It had four wheels. The body was composed of panel-work, and rested on springs of steel. It was constructed, finished and furnished in a manner fitting a pleasure carriage; and what is decisive, it was designed and generally used for the transportation of *persons*. Its *occasional* use for the transportation of goods, did not change its nature. *Moss* v. *Moore*, 18 *Johns. Rep.* 128. *Pardee* v. *Blanchard*, 19 *Johns. Rep.* 445. & seq. per *Kent*, Chancellor. *Middlesex Turnpike Company* v. *Wentworth*, 9 *Conn. Rep.* 371. 374. *Talcott Mountain Turnpike Company* v. *Marshall*, 11 *Conn. Rep.* 186. 190. 192. Nor does the fact that this vehicle was drawn by one horse, take it out of the class of pleasure carriages; which are often constructed for one or for two horses, and are used with one or two, as convenience may require; but this does not vary the class to which the vehicle belongs.

It is not conceded that this is a wagon; which ordinarily imports a vehicle for the transportation of burdens; but if it were, it would not help the defendant. The expression "pleasure carriage," is a *generic* term, embracing several *species*, of which wagon may be one. We have coaches, barouches, curricles, wagons, buggies, &c.; but they all are, or may be, pleasure carriages.

2. That the plaintiffs are entitled, under the second count,

*Middlesex,* July, 1840.

Middlesex Turnpike Co. *v.* Freeman.

to recover $12\frac{1}{2}$ cents, for the passage of a four-wheeled carriage, drawn by one horse, the body hung on steel springs, and generally used as a pleasure carriage. This case is within the letter and spirit of the statute of 1827. Previous to 1827, much controversy existed relative to the toll on common one-horse wagons, and also one-horse pleasure carriages. The statute of 1827 settled the rate of toll on both these species of one-horse vehicles. In 1838, this statute was repealed, but was revived, by an act passed in 1839, repealing the act of 1838. (*a*) The statute of 1839 affirms in terms the statute of 1827, as to one-horse wagons. The statute of 1839 re-enacts in terms the statute of 1827, as to one-horse wagons, except so far as it is modified, by the clause, "whether the body be hung on springs or not." The four-wheeled pleasure carriages, drawn by one horse, specified in the statute of 1827, are not touched, by the statute of 1839. These are left to the operation of the statute of 1827. An elegant four-wheeled pleasure carriage, drawn by one horse, ought to pay more toll than a common one-horse wagon. So the legislature of 1827 thought and said; and the legislature of 1839 has said nothing to the contrary, leaving such vehicles to pay, as they ought to do, the toll of a chaise.

3. That if the charter prescribes no toll, or an inadequate one, for a one-horse pleasure wagon, the statute of 1827 sup-

(*a*) The statute of 1827 provided, "that in all cases in which the toll for a one-horse wagon is not specifically prescribed, by the charter, or any subsequent grant of any turnpike incorporation in this state, the toll for each wagon, the body not hung on springs of iron or steel, drawn by one horse, for passing on the road, whether loaded or not, shall be $6\frac{1}{4}$ cents, at each gate at which full toll is payable; and 3 cents, at each gate at which half toll is payable; and no greater rates of toll shall, in the cases aforesaid, be payable for the carriages of the kind mentioned: provided, that for four-wheeled carriages, drawn by one horse, and the body hung on springs of iron, steel or leather, and generally used as a pleasure carriage, the same sum shall be paid as for a chaise."

By the 2d section of an act passed in 1838, the foregoing statute was repealed.

The statute of 1839 is as follows: "*Sect.* 1. That in all cases in which the toll for a one-horse wagon is not specifically prescribed, by the charter, or any subsequent grant of any turnpike or bridge incorporation in this state, the toll for each wagon, drawn by one horse, whether the body be hung on springs or not, for passing on the road or bridge, whether loaded or not, shall be $6\frac{1}{4}$ cents, at each gate where full toll is payable, and 3 cents, where half toll is payable, and no more.

"*Sect.* 2. That the act in addition to an act relating to turnpike roads, passed in 1838, be, and the same is hereby repealed."

plies the defect, and operates as a legislative grant, which a subsequent legislature could not revoke or repeal. *Derby Turnpike Company* v. *Parks*, 10 *Conn. Rep.* 522. 543. *Pardee* v. *Blanchard*, 19 *Johns. Rep.* 447, 8.

*Hungerford* and *Clark*, for the defendant, contended, 1. That this grant ought to be construed most favourably for the public, and against the grantees, when reasonable doubts exist as to the extent of the privilege conferred by it. *Middletown* v. *Sage*, 10 *Conn. Rep.* 222. *Hollister* v. *Union Company*, 9 *Conn. Rep.* 436. 11 *Conn. Rep.* 190.

2. That aside from the statute of 1827, this vehicle was a wagon, for the passage of which a toll of 10 cents only was payable. If it was finished in better style than wagons ordinarily are, and used principally for the conveyance of the defendant and his family, this does not alter its character: it is still a wagon—a handsome wagon—a choice wagon. Nor if it is embraced by the more general expression, "pleasure carriage," does this deprive it of its specific character as a wagon. There is no inconsistency, one being included in the other; and in determining the rate of toll, the specific description is to govern.

3. That the plaintiffs were not entitled to a higher toll than 10 cents, by virtue of the statute of 1827. In the first place, there being no power reserved in the charter to repeal or vary any of its provisions, that statute was inoperative upon the plaintiffs, without their assent; and it does not appear, that they ever gave their assent. Secondly, the statute of 1827 was repealed in 1838; and although the repealing act was itself repealed in 1839, yet the statute of 1827 was not thereby revived, because the act of 1839 was not a mere statute of repeal, but contained provisions inconsistent with the statute of 1827.

*Bacon*, in reply, insisted, that the statute of 1839 was not inconsistent with the provisions in the act of 1827, on which the plaintiffs relied.

SHERMAN, J. The plaintiffs insist, that the judgment of the court below is erroneous, because the sum tendered was insufficient, and contend, that they were entitled either to the

*Middlesex,* July, 1840.

Middlesex Turnpike Co. *v.* Freeman.

25 cents, payable by the charter on "a four-wheeled pleasure carriage," or to 12½ cents, by virtue of the statute of 1827. The defendant, on the other hand, insists, that his vehicle is "a wagon," on which a toll of 10 cents is payable, by the charter; and that this toll has not been altered, by any subsequent act or grant.

The question first presented for the consideration of the court, is, within which, if either, of these provisions of the charter, this vehicle was included, anterior to the statute of 1827. The next inquiry will be, whether that statute has varied the rights of the plaintiffs.

The first question depends on the description of the vehicle given in the plea, compared with the words of the charter. This vehicle is certainly "a four-wheeled pleasure carriage." This has been settled, by decisions of our supreme court, in cases less clear than this; and its particular structure, as set forth in the plea, is admitted by the demurrer. According to that description, it is also a wagon. As it is strictly within both descriptions, by which shall the toll be regulated?

In construing statutes and written instruments, where a general and a specific description embrace the same thing, it is considered as within the latter only, if confined to one. For instance, the words "four-wheeled pleasure carriage," embrace coaches, barouches, and a great variety of other vehicles. But if this charter, after imposing a toll of 25 cents on all four-wheeled pleasure carriages, had prescribed 20 cents as the toll on every phaeton, there would be no doubt that the phaeton thus specified, would be subject to the 20 cents, and not to the 25 cents mentioned in the general clause, although within its language. For the same reason, the imposition of 10 cents on each wagon, excludes the vehicle in question from the same general clause. Every wagon, whether for business or pleasure, is within the words of the specific provision, which imposes a toll of 10 cents; and consequently, is not liable for the 25 cents under the general clause. Any improvements in the form or use of wagons, which have been made since the date of the charter, do not vary its construction or effect, although they may have furnished just cause for additional legislation.

For these reasons, we consider this carriage as liable, by the charter, to a toll of 10 cents only. The plea of the de-

fendant is, therefore, sufficient, unless the plaintiffs are entitled to a larger toll, by the statute of 1827.

That statute provides, that "in all cases where the toll for a one-horse wagon is not *specifically* prescribed, by the charter, or any subsequent grant, of any turnpike incorporation in this state, the toll for each wagon, the body not hung on springs of iron or steel, drawn by one horse, &c. shall be 6¼ cents, at each gate where full toll is payable: provided, that for four-wheeled carriages, drawn by one horse, and the body hung on springs of iron, steel or leather, and generally used as a pleasure carriage, the same sums shall be paid as for a chaise." The toll on a chaise is 12½ cents, the sum demanded by the plaintiffs, in the second count. The vehicle in question is a one-horse wagon. This sort of wagon is not specifically named in the charter. It is, consequently, within the statute of 1827. This statute regulated the toll in all such cases, as far as it could take effect under that provision of the constitution of the *United States*, which disables the several states from passing any law impairing the obligation of contracts. As no power is reserved in this charter to repeal or vary any of its provisions, the statute was inoperative in regard to the rights of the plaintiffs, unless assented to by them. But it enabled the plaintiffs to elect to take the toll of 12½ cents, in each of the instances stated in the declaration. But this statute of 1827 was repealed, by an act of 1838. It is insisted, however, by the plaintiffs, that it was revived, by a repeal of the latter act, by a statute of 1839, and was in force at the times when the plaintiffs' demands arose. This would be true, and would entitle the plaintiffs to recover 12½ cents for each passage of the defendant's wagon through their gate, were not the last act inconsistent with that provision of the statute on which the plaintiffs rely. The statute of 1839 not only repeals the act of 1838, but prescribes that "the toll on all one-horse wagons, whether hung on springs or not, shall be 6¼ cents, at each gate where full toll is payable, and 3 cents where half toll is payable, and no more." There was, therefore, no public statute in force, at the times when the tolls in question became due to the plaintiffs, by which a greater toll was payable on one-horse wagons, of any description, than is prescribed in the statute of 1839. But as that statute is not shewn to have been assented to, by the plaintiffs, they are still

*Middlesex,* July, 1840.

Middlesex Turnpike Co. *v.* Freeman.

entitled to the toll prescribed by their charter; and that the defendant tendered.

It has been contended, that the statute of 1839 is not inconsistent with the provisions on which the plaintiffs rely, in the act of 1827. It extends to those cases only, in which the toll for a one-horse wagon is not specifically prescribed, "by the charter or subsequent grant of any turnpike or bridge incorporation;" and it is insisted, that the act of 1827 is such a grant to this and all other turnpike companies, and is, therefore, not reached by the act of 1839. But, by "the charter or subsequent grant of any turnpike or bridge incorporation," is not meant a general statute law, but a special grant to some particular corporation.

Further, the act of 1827, which reduced part of the toll on one-horse wagons, was void as to the plaintiffs, until it had their assent. This does not appear to have been given until after the act of 1839; and that act, by prescribing a new toll, would have repealed the first, if that of 1838 had never been enacted. In short, the law on which they claim the toll demanded in their second count, was twice repealed—if that were possible—before they assented to its provisions.

We affirm the judgment of the superior court.

In this opinion the other Judges concurred.

Judgment affirmed.